# UNITED STATES DISTRICT COURT
for the
Southern District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>Apple iPhone, Black with clear "CQ" case | Case No. '21 MJ0246 |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-3, incorporated herein by reference.

located in the _Southern_ District of _California_, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18, USC sec. 1951 | Interfere with Commerce by Robbery |
| 21, USC sec. 841, 846 | Distribution of Controlled Substances, Conspiracy to Distribute Controlled Sub. |
| 18, USC sec. 924(c) | Poss. of Firearm During and In Relation to Crime of Violence, Drug Trafficking |

The application is based on these facts:

See Attached Affidavit of FBI Special Agent Anne E. Skomba, incorporated herein by reference.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days: _____ )* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Special Agent Anne E. Skomba, FBI
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by _telephone_ *(specify reliable electronic means)*.

Date: 1/20/2021

*Judge's signature*

City and state: San Diego, California

Hon. Mitchell D. Dembin, U.S. Magistrate Judge
*Printed name and title*

**AFFIDAVIT IN SUPPORT OF SEARCH WARRANT**

I, Anne E. Skomba, being duly sworn, hereby state as follows:

INTRODUCTION

1. I submit this affidavit in support of an application for a warrant to search the following electronic devices seized during the arrest of Jonathan Stephen ZAKO (Defendant) in connection to the armed robbery of an illegal marijuana dispensary and delivery service, the distribution and sales of controlled substances, and the use of firearms in the commission of those crimes:

    a. Apple iPhone, Rose Gold (**Target Device 1**)

    b. Samsung cell phone, IMEI 354212117684855 (**Target Device 2**)

    c. Apple iPhone, Black with clear "CQ" case (**Target Device 3**)

collectively, **Target Devices**, as further described in Attachments A-1, A-2, and A-3.

2. Based on the information below, I believe there is probable cause to believe a search of the **Target Devices** will yield evidence of crimes, specifically violations of Title 18, United States Code, Section 1951 (Interfere with Commerce by Robbery), Title 18 United States Code, Section 924(c) (Using, Carrying, and Brandishing Firearms During and In Relation to a Crime of Violence and Drug Trafficking), Title 18, United States Code, Section 924(c)(Possession of a Firearm in Furtherance of a Drug Trafficking Crime), Title 21, United Sates Code, Sections 841(a)(1) and 846 (Conspiracy to Possess with Intent to Distribute and Distribute a Controlled Substance), Title 21, United States Code, Section 841(a)(1)(Possession of Controlled Substance with Intent to Distribute) and Title 18, United States Code, Section 2 (Aiding and Abetting), as described in **Attachment B**.

3. **Target Device 1** and **Target Device 2** were in ZAKO's possession during the time of his arrest on October 19, 2020, and are currently in federal custody located at San Diego FBI Evidence Control Unit, 10385 Vista Sorrento Parkway, San Diego, California. **Target Device 3** was in the possession of an individual with ZAKO at the time of ZAKO's arrest, who was temporarily detained at the arrest scene. In statements made to the FBI during and after detainment, the associate ("T.P."), claimed **Target Device 3** belonged to

ZAKO. **Target Device 3** was collected by FBI Agents and is currently in federal custody at San Diego FBI Evidence Control Unit, 10385 Vista Sorrento Parkway, San Diego, California. Based on T.P.'s statements and other facts described in this affidavit, I believe **Target Device 3** to be owned and used by Jonathan ZAKO and to contain evidence of the crimes as described in Attachment B.

4. Except as otherwise noted, information set forth in this affidavit has either been observed or provided to me by law enforcement officers with whom I have spoken, who were involved in this investigation, or whose reports I have read and reviewed. Likewise, information resulting from surveillance, except where otherwise indicated, does not necessarily set forth my own observations but rather has been provided directly or indirectly by other law enforcement officers who conducted such surveillance.

5. The result of my training and experience, the facts gathered during this investigation, and my conversations with other Special Agents of the Federal Bureau of Investigation (FBI), and Task Force Officers (TFOs), as well as Detectives and Officers and other local investigators familiar with violent crimes, commercial robberies, and bank robberies, form the basis of the opinions and conclusions set forth below.

6. Because this affidavit is being submitted for the limited purpose of seeking the search warrants specified above, I have not set forth each and every fact learned during the course of the investigation. Rather, I have set forth only those facts that I believe are necessary to establish probable cause for the requested warrants. Dates and times outlined below are approximate.

## TRAINING AND EXPERTISE

7. I am a Special Agent with the Federal Bureau of Investigation (FBI), and have been so employed since September 2019. As a federal agent, I am authorized to investigate violations of laws of the United States and I am a law enforcement officer with the authority to execute warrants issued under the authority of the United States. I am currently assigned to the Violent Crimes Task Force of the San Diego Field Office where I investigate various

crimes that include, but are not limited to, bank robberies, commercial robbery chains, kidnappings, extortions, and assaults on federal officers.

8. I completed approximately twenty weeks of training at the FBI Academy in Quantico, Virginia. During the training, I received instruction in a variety of investigative techniques commonly used in support of a wide range of the FBI's investigative priorities. The training included instruction regarding the use of confidential human sources, electronic and physical surveillance techniques, law enforcement tactics, search and seizure laws and techniques, interviewing strategies and skills, and a variety of other subjects.

9. Prior to becoming a Special Agent with the FBI, I was employed as a Staff Operations Specialist (SOS) within the FBI's New York Office.

10. My experience as an FBI Special Agent and FBI employee has included the investigation of cases involving the use of computers and the internet to commit crimes. I have received additional training and gained experience through interviewing witnesses, subjects, and victims of violent crimes. I have participated in the execution of searches and seizures, and received advanced training focused on arrest procedures, search warrant applications, computer crimes, computer evidence identification, cellular device exploitation, and various other criminal laws and procedures. A number of these investigations have dealt with the use of electronic communication devices to assist in the commission of the crime. Persons involved in criminal activity often conduct research on potential targets using computers and the internet and communicate via these devices in furtherance of their criminal endeavors. I have received instruction from and read reports and search warrant affidavits prepared by other investigators/officers on tracing IP addresses, Internet Service Providers, e-mails, expanded headers, and computer/internet tools used to trace and identify the persons who commit computer crimes. This information has proven to be invaluable in proving an individual's involvement, or lack thereof, in the crime being investigated.

11. In connection with robbery investigations in which I have participated, as well as upon information related to me by other individual(s), including conversations with other law enforcement officers, I am familiar with the methods used by individuals who commit armed commercial robberies. Armed commercial robberies are typically planned in advance; individuals committing the robberies communicate and coordinate with each other prior to, during and after each robbery. Furthermore, in most armed commercial robberies, surveillance of the targeted location is conducted prior to the attempt.

12. In connection with narcotics investigations in which I have participated, as well as upon information related to me by other individuals, including conversations with other law enforcement officers, I am familiar with methods used by individuals who distribute and sell illegal narcotics. Drug dealers typically develop a network of suppliers, who provide them with product, and customers, to whom they distribute the product. Like a traditional business, individuals involved in distributing and selling illegal narcotics typically maintain records, ledgers and contact books, which allow them to organize, arrange and track their transactions with suppliers and customers. These records are frequently kept in hard copy through physical receipts or notebooks, as well as electronically on cellular devices, laptop devices or other digital media.

13. I have led and participated in a multitude of investigations, and my interactions with other agents, and other state and local law enforcement officers familiar with violent crimes and narcotics sales, as well as my training, form the basis of the opinions and conclusions set forth below, which I have drawn from the facts set forth herein, and set forth in substance not verbatim, unless otherwise noted.

14. Based on the above investigation, and my training, experience, and consultation with other law officers regarding robberies and other violent crimes:

    a. Multiple individuals coordinating a robbery will utilize cell phones to arrange meeting times and locations and otherwise discuss the logistics of the robbery.

b. Individuals involved in robberies and other violent crimes who are working in concert with each other often communicate using cellular telephones to plan and carry out robberies.

c. Individuals involved in robberies and other violent crime use cellular telephones to increase their mobility and coordinate illicit activity, through traditional audio conversations, emails, social media, and other electronic applications. Records of these communications are often stored on social media accounts and on email accounts.

d. Individuals involved in robberies may utilize web or social media searches related to robbery targets, travel to and from their robbery targets, searches related to methods or techniques for robbery, searches related to possible safety measures at their robbery targets, and searches made after the robberies related to law enforcement investigations into the robberies.

e. Individuals involved in robberies and other violent crimes often have electronic documents and files, which were used to aide and facilitate the commission of the crime. In many instances, these files can contain additional forensic and transactional evidence linking the subject to the crime and/or identification of other co-conspirators. These files may be saved within email or social media accounts.

f. Individuals involved in robberies and other violent crimes often will use cell phones to take photographs of stolen items in order to facilitate the sale of those items. Additionally, individuals involved in robberies and other violent crimes

may post these photographs to social media in order to further facilitate the sale.

g. Individuals involved in robberies and other violent crimes often use social media accounts to post photographs of themselves wearing clothing that is later worn during a robbery or crime. These photographs are saved to their accounts and posted before and after the robberies, but are often not available to be viewed by the public. These photographs are also often saved to the phone's photo applications and can be carried over from an old phone to a new phone via a cloud application.

h. Through training and conversations with other special agents and experts, I have learned locations and/or GPS information can be electronically stored within social media accounts and extracted for analysis. This information can indicate times a particular device or social media posting was made near a specific location, such as the scene of a robbery or the residence of a co-conspirator.

15. In addition, I know that individuals involved in drug trafficking often maintain cellular telephones at their residence, residence of associates, places of business, in their vehicle, and/or on their person for the purposes of arranging transactions. Persons attempting to arrange for the sale, purchase, transportation and manufacture of controlled substances frequently will contact their illegal business customers, purveyors and associates to negotiate business deals. Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I am aware that cellular telephones (including their SIM card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice

6

and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones of individuals involved in drug trafficking may yield evidence:

  a. tending to identify efforts to possess or distribute controlled substances;

  b. tending to identify accounts, facilities, storage devices, and/or services-such as email addresses, IP addresses, and phone numbers- used to facilitate efforts to possess or distributed controlled substances;

  c. tending to identify co-conspirators, criminal associates, or others involved in possessing or distributing controlled substances;

  d. tending to identify travel to or presence at locations involved in the possession or distribution of controlled substances, such as stash houses, load houses, or delivery points;

  e. tending to identify the user of, or persons with control over or access to, the cellular telephone; and/or

  f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

16. It is also my opinion and belief that the above-described documents are currently possessed by narcotics dealers and manufacturers much the same way a legitimate business will maintain records and tools of its trade whether or not the business has a particular item in inventory on a given date. These documents are kept by narcotics dealers whether or not the dealer is in possession of any drugs or chemicals at any given moment.

7

PROBABLE CAUSE

*Background on Investigation*

17. On or about June 12, 2018, several individuals committed an armed robbery of an unlicensed marijuana delivery service located at 3645 Ruffin Road, Second Floor, "Pride" Suite, San Diego, CA 92123 ("the Dispensary"). Prior to the robbery, M.S., an employee of the dispensary, was informed that a customer was coming to buy a marijuana product called "shatter". At approximately 1:00 a.m. an individual named "Johnny", later identified by M.S. as Jonathan ZAKO, entered the business. The victim recognized ZAKO, who owned another marijuana delivery service on the third floor of the same building. According to the victim, ZAKO then removed a firearm, which appeared to be a revolver, from his pants. Surveillance video and video stills obtained by the FBI show ZAKO, who wore a dark blue long-sleeved collared shirt and dark pants at the time of the robbery:



At approximately the same time, four males wearing masks and carrying guns entered as well. In addition to wearing masks, two of the males were armed with and assault rifle and a semi-automatic handgun. After the additional males entered, ZAKO pointed his handgun at M.S., and said this was payback because ZAKO's delivery service had been robbed by M.S.'s boss. One of the unidentified males then punched M.S. and pushed him to the ground. While on the ground, M.S. was bound with plastic zip ties

8

while ZAKO and the others took marijuana products, United States Currency, a watch, multiple cellular telephones, a Bluetooth speaker, and a laptop computer.

18. Based on the eyewitness identification and surveillance footage, the FBI identified Jonathan Stephen ZAKO, date of birth February 18, 1992 as a suspect in the armed robbery. California Department of Motor Vehicle (DMV) records listed ZAKO as 5'08" tall, 190 lbs and provided the following photo of him:



19. On October 7, 2020, the FBI executed search warrants at ZAKO's residence, as well as for two of ZAKO's vehicles. Upon execution of the search warrant at the residence, agents observed that 4856 Date Street was set up like a commercial marijuana dispensary, in that there were shelves full of marijuana products on the walls, packaging, varying amounts of marijuana, electronics (including several cell phones and laptops), as well as a surveillance system installed on the outside of the building with multiple cameras and a DVR. The FBI also found a blue shirt matching the description of the one worn by ZAKO during the robbery hanging in a closet within ZAKO's room. ZAKO was not at the location, but his mother was present. She informed the agents that she was visiting from Michigan, and informed agents that ZAKO had travelled to Michigan over the weekend.

20. On October 16, 2020, a federal grand jury indicted ZAKO on the following charges: conspiracy to possess with intent to distribute and distribute a controlled substance (21 U.S.C. § 841 (a)(1) & 846), interference with commerce by robbery (18 U.S.C. §§ 1951 and 2), brandishing firearms during in and in relation to a drug trafficking crime and a crime of violence (18 U.S.C. §§ 924(c) and 2), possession with

intent to distribute a controlled substance (21 U.S.C. § 841(a)(1) and possession of a firearm in furtherance of a drug trafficking crime (18 U.S.C. §§ 924(c) and 2).

21. On October 19, 2020, the FBI arrested Jonathan Stephen ZAKO at the southwest corner of J Street and 15th Street in downtown San Diego, California. An associate of ZAKO's, T.P., was with him at the time of arrest and was temporarily detained.

*Identification of Target Devices*

22. The FBI previously identified telephone number 619-919-9666 as a phone number used by ZAKO in operation of an illegal marijuana delivery service named "Super Buds." On February 21, 2020, the FBI seized discarded waste items placed for garbage and recycling pickup at the curb in front of 4856 Date Street, San Diego, California 92102, Jonathan ZAKO's residence. Upon searching the items, the FBI discovered an empty cardboard box labeled "Dank Vape Tubes"[1] and another empty box of STNDRD Cannabis infused gummies[2]. The FBI also found a business card bearing the name "Super Buds" and the Super Buds logo. The other side of the card provided the hours for the marijuana delivery service and listed telephone number 619-919-9666, as well as Instagram account "SUPER_BUDS619."[3]

23. On the afternoon of October 10, 2020, Jonathan ZAKO visited an AT&T store in downtown San Diego, California. Subsequent to ZAKO's visit, the FBI interviewed one of the store's employees. The employee observed ZAKO already had two phones on him when he entered the store, which the employee described as a gold XX Max iPhone affiliated with telephone number 424-425-4066 and a black iPhone.

---

[1] According to open source research, "dank vapes" are vape cartridges containing THC, the psychoactive ingredient in cannabis. They are considered "black market", unregulated cannabis products.

[2] According to open source research, STNDRD Cannabis infused gummies are medicated edibles containing THC.

[3] Experian records have shown this telephone number is linked to ZAKO.

10

That afternoon, ZAKO purchased a third phone—a black iPhone 11—and activated it with one of the phone numbers on his account—619-919-9666.

24. Two cellular telephones—**Target Device 1** and **Target Device 2**—were found in ZAKO's possession at the time of arrest. I called telephone number 424-425-4066 after the arrest and observed **Target Device 1** ring and my telephone number appear on the screen as an incoming call.

25. When T.P. was detained at the time of ZAKO's arrest, T.P. was holding **Target Device 3** in his hand. Agents asked T.P. who the phone in his hand belonged to, and T.P. replied it belonged to his friend, "Jonathan." Agents asked if by his friend "Jonathan" he meant ZAKO. T.P. confirmed "Jonathan" was ZAKO and **Target Device 3** belonged to ZAKO.

26. After T.P. was released from handcuffs and no longer detained, he agreed to an interview with the FBI. During the interview, T.P. confirmed that the phone with a case on it (**Target Device 3**) was not his and it belonged to ZAKO.

27. On October 19, 2020, Jonathan ZAKO signed a receipt for property listing all three **Target Devices**. ZAKO provided the Agent completing the receipt for property with the passcode to **Target Device 3**. That afternoon, I called 619-919-9666 and observed **Target Device 3** ring and my telephone number appear on the screen as an incoming call.

## METHODOLOGY

28. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy

all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may several months.

29. Following the issuance of this warrant, I will collect the **Target Devices** and subject them to analysis. All forensic analysis of the data contained within the telephones and their memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

30. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this court.

## PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE

31. Law enforcement has not previously attempted to obtain the evidence sought by this warrant.

## CONCLUSION

32. Based on the facts and information set forth above, I submit there is probable cause to believe that a search of the **Target Devices** will yield evidence of Defendant's violations of Title 18, United States Code, Section 1951 (Interfere with Commerce by

Robbery), Title 18 United States Code, Section 924(c) (Using, Carrying, and Brandishing Firearms During and In Relation to a Crime of Violence and Drug Trafficking), Title 18, United States Code, Section 924(c)(Possession of a Firearm in Furtherance of a Drug Trafficking Crime), Title 21, United Sates Code, Sections 841(a)(1) and 846 (Conspiracy to Possess with Intent to Distribute and Distribute a Controlled Substance), Title 21, United States Code, Section 841(a)(1)(Possession of Controlled Substance with Intent to Distribute) and Title 18, United States Code, Section 2 (Aiding and Abetting). Accordingly, I request that the Court issue a warrant authorizing law enforcement to search the items described in Attachments A-1, A-2 and A-3, and seize the items listed in Attachment B using the above-described methodology.

I swear the foregoing is true and correct to the best of my knowledge and belief.

_____
ANNE E. SKOMBA
Special Agent, FBI

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 20th day of January, 2021.

_____
HONORABLE MITCHELL D. DEMBIN
United States Magistrate Judge

# **ATTACHMENT A-3**

PROPERTY TO BE SEARCHED

The following property is to be searched:

Apple iPhone, Black with clear "CQ" case (**Target Device 3**)

The Target Device is currently in the possession of the FBI, located at 10385 Vista Sorrento Parkway, San Diego, California.

## ATTACHMENT B

ITEMS TO BE SEIZED

Authorization to search the Target Devices described in Attachments A-1, A-2, and A-3, respectively, includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular phone. The seizure and search of **Target Devices** will be conducted in accordance with the affidavit in support of the search warrant.

The evidence to be seized from the **Target Devices** will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of June 1, 2018, up to and including October 19, 2020:

   a. Photographs and/or video of clothing, firearms, disguises worn, and materials used during the robbery, along with any proceeds attained from the robbery and materials taken from the robbed location;
   b. Photographs and/or video of marijuana, marijuana products and marijuana goods to include edibles, dank vapes, "shatter", etc. and of other controlled substances, to include but not limited to cocaine, as well as of instruments typically used to facilitate sales/distribution (i.e. scales, baggies, etc.);
   c. Records of plans to commit robbery, plans to sell or transfer goods obtained during the robbery, plans to acquire or dispose of firearms used in the robbery, and records, of any reporting of the robbery by the press to the public;
   d. Records of plans to conduct sales of controlled substances, including the operation and management of unlicensed marijuana dispensaries, to include the prices and amounts of sales, negotiation of sales, location of sales and the individuals participating in sales, management and/or operation of unlicensed marijuana dispensaries;
   e. Records and images pertaining to "Super Buds", to include Super Buds

marketing materials and employees;

f. Phone contents tending to identify co-conspirators, criminal associates, or others involved in the robbery and the distribution/sales of controlled substances, including the operation management of unlicensed marijuana dispensaries;

g. Phone contents tending to identify the acquisition of firearms used for robbery and/or the distribution/sales of controlled substances;

h. Location data or other records tending to identify travel to or presence at locations that were robbed or attempted to be robbed;

i. Location data or other records tending to identify locations of illegal narcotics transactions, including the locations involved in the delivery of marijuana and marijuana products;

j. Webpage or other phone data related to robbery targets, searches related to methods or techniques for robbery, and searches related to possible security measures at robbery targets;

k. Video or images of security footage at the robbery location;

l. Communications and social media posts regarding robberies or proceeds from robberies, to include celebratory remarks after the successful completion of the robbery;

m. Communication with others made about or in executing any robberies;

n. Communication with others made about or in obtaining supply of controlled substances for distribution;

o. Phone contents tending to identify the user of, persons with control over assess to, the telephone, and and/or;

p. Phone contents tending to place in context, identify the creator or recipients of, or establish the time of creation or receipt of communications, records, or data, involved in the activities described above;

which are evidence of violation of Title 18, United States Code, Section 1951

5

(Interfere with Commerce by Robbery), Title 18 United States Code, Section 924(c) (Using, Carrying, and Brandishing Firearms During and In Relation to a Crime of Violence and Drug Trafficking), Title 18, United States Code, Section 924(c)(Possession of a Firearm in Furtherance of a Drug Trafficking Crime), Title 21, United Sates Code, Sections 841(a)(1) and 846 (Conspiracy to Possess with Intent to Distribute and Distribute a Controlled Substance), Title 21, United States Code, Section 841(a)(1)(Possession of Controlled Substance with Intent to Distribute) and Title 18, United States Code, Section 2 (Aiding and Abetting).